**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

FABCON EAST, L.L.C.,

                Plaintiff,

v.

THE STEGLA GROUP, INC.,

                Defendant.

Civ. No. 10-4601(DRD)

**O P I N I O N**

*Appearances by:*

GIBBONS P.C.
by:    Lisa Lombardo, Esq.
One Gateway Center
Newark, New Jersey 07102

    *Attorneys for Plaintiff*


DE LUCA & FORSTER
by:    Thomas G. De Luca, Esq.
11 Commerce Drive
Cranford, New Jersey 07016

    *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

This case arises out of a dispute between a subcontractor, Fabcon East, L.L.C. ("Fabcon"), and a general contractor, The Stegla Group ("Stegla"), regarding unpaid invoices. Plaintiff Fabcon alleges that Defendant Stegla owes it $136,903.70 for work completed in connection with three movie theater construction projects. Defendant argues that the contracts at issue prohibit the parties from filing to enforce the contracts more than one year after work is complete and that Plaintiff's action is thereby untimely. Presently before the court is Defendant's Motion for Summary Judgment.

For the reasons set forth below, Defendant's Motion is DENIED.

## I.    BACKGROUND

The basic facts of this case are relatively straightforward. Plaintiff Fabcon is a Pennsylvania-based corporation that provides design and construction services on commercial projects. (Complaint ¶ 1). Defendant Stegla is a New York corporation that regularly engages in construction work in New Jersey. Id. at ¶ 2.

In 2005 and 2006, the parties entered into three contracts pursuant to which Fabcon would provide subcontractor services for Stegla. The first contract was signed on August 2, 2005 and required that Fabcon furnish and erect insulated wall panels at a Loews theater in Danbury, Connecticut (the "Danbury" project). Id. at ¶ 4. The second contract was signed October 3, 2005 and required that Fabcon furnish and install precast concrete wall panels at a Loews theater in Rockaway, New Jersey (the "Rockaway" project). Id. at ¶ 7.The third contract was signed on August 29, 2006 and required that Fabcon furnish, install, and caulk insulated sandwich panels at an AMC theatre in Linden, New Jersey (the "Linden" project). Id. at ¶ 10.

Under the terms of the three contracts, Stegla agreed to pay Fabcon a total of $1,584,197. Id. at ¶ 14. However Plaintiff contends that its final invoices issued in connection with each project were never paid, and that it is still owed an outstanding balance of $136,903.70. Id. at ¶ 17. Stegla boldly admits that it "does not dispute substantially the amount that Fabcon claims is due for its Work on these projects." (Def. Br. 6). Stegla instead argues that the debt is time barred and uncollectable under the contracts. Id.

Each contract contains a section titled "CHOICE OF LAW, VENUE AND LIMITATIONS PERIOD." This section of the Rockaway and Linden contracts states, in pertinent part:

> The internal laws of the State of New Jersey, without regard to its choice of law provisions, shall govern the performance and interpretation of the terms and conditions of this agreement…All actions and proceedings by [Fabcon] against Stegla must be commenced by the [Fabcon] within one year from the final completion of the Work.

Similarly, the Danbury contract provides that:

> The internal laws of the State of Connecticut, without regard to its choice of law provisions shall govern the performance and interpretation of the terms and conditions of this agreement… All actions and proceedings by [Fabcon] against Stegla must be commenced by [Fabcon] within one year from the final completion of the Work.

Plaintiff brought this action on July 14, 2010 in New Jersey Superior Court, Morris County, seeking damages for breach of contract. (Doc. No. 1). On August 31, 2010, Defendant removed to Federal Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Id. Defendant now moves for summary judgment, asking this Court to dismiss Plaintiff's claim as untimely under the limitations period set out in the contracts.

## II.     DISCUSSION

**A.     Standard of Review**

Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

In a motion for summary judgment, the moving party has the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine issue of fact exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a genuine issue of material fact and do not merely suggest "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

A party must support its assertions that a fact cannot be or is genuinely disputed "by (A) citing to particular parts of materials in the record…or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(c)(1). If a party "fails to properly

support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may…(2) consider the fact undisputed for purposes of the motion…" Rule 56(e).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and determine the truth of the matter, but, rather, to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate.

In this case, little or no discovery has taken place, and Defendant has introduced virtually no evidence. Defendant's motion is premised entirely on the language of the contracts and its claim that Plaintiff's action is time barred. As such, Defendant's motion can only succeed if Plaintiff's claim is prohibited by enforceable limitation language in the agreements.

**B.  Choice of Law**

While neither party has briefed the issue, the contracts from which this dispute arises have different choice of law provisions. In particular, the Danbury contract states that it will be governed by the law of Connecticut, while the Rockaway and Linden contracts state that they will be governed by the law of New Jersey.

New Jersey generally permits and enforces choice of law provisions in validly negotiated contracts. Schunkewitz v. Prudential Securities Inc., No. 03-1181, 99 Fed. Appx. 353, 355 (3d Cir. April 27, 2004) ("New Jersey conflict of laws principles clearly recognize the validity and enforceability of choice-of-law provisions in contracts") quoting Pepe v. Rival Co., 254 F.3d 1078 (3d Cir. 2001); see also Air Economy Corp. v. Aero-Flow Dynamics, Inc., 122 N.J. Super.

5

456, 457 (App. Div. 1973) ("an agreement to be bound by the laws of a designated state…will be enforced unless it is unfair, unreasonable or against the public policy of the forum state."). As such, each choice of law clause will be applied, and each contract analyzed in accordance of the law of New Jersey or Connecticut, as applicable.

### C. Contractual Limitations Period

Defendant argues that Plaintiff's complaint was filed "more than two years after the contractual limitations periods expired" and that summary judgment is thereby appropriate. (Def. Br. 8). Plaintiff offers three arguments in response. First Plaintiff contends that "Defendant should be estopped from relying upon the contractual limitations clauses" because it "lulled Fabcon into believing that it would be paid the amount owing on each of the underlying contracts…." (Pl. Br. 16). Second, Plaintiff argues that by admitting the amount of the debt in its dealings with Plaintiff, Defendant has waived the statute of limitations. (Pl. Br. 24). Last, Plaintiff argues that the one year contractual limitation period contradicts the payment process described in other portions of the agreement and should not be enforced. (Pl. Br. 25).

Both New Jersey and Connecticut recognize the validity of contractual limitations on the time to file suit. Air Brake Systems, Inc. v. TUV Rheinland of North America, Inc., 699 F.Supp. 2d 462, 472 (D.Conn. 2010); ("the laws of Connecticut permit parties to make such provisions a valid and binding part of their contracts. That is also the trend in the vast majority of the states."); Eagle Fire Protection Corp. v. First Indem. of America Ins. Co., 145 N.J. 345, 354 (1996) ("Contract provisions limiting the time parties may bring suit have been held to be enforceable, if reasonable.").[1]

---

[1] See also Chichester v. New Hampshire Fire Ins. Co., 51 A. 545, 546 (Conn. 1902) ("The provision in the policy sued upon requiring an action to be brought 'within twelve months…' does not operate as a statute of limitations. It is a part of the contract. The rights of the parties flow from the contract, and must be governed by the rules of law applicable to contracts. Such a

6

However Connecticut and New Jersey both also recognize that a defendant may be estopped from raising a timeliness defense on the basis of inequitable conduct. Where a Defendant has, through inequitable conduct or deceit, induced a Plaintiff into missing a deadline, he or she may not raise that deadline as a defense. PRESSLER, *Current N.J. Court Rules,* comment 36.4.1 on *R.* 4:5-4 (2007) ("The doctrine of equitable tolling is typically applied to relieve a plaintiff who has been induced or tricked by defendant into missing a deadline."); Morris v. Costa, 174 Conn. 592, 599 (1978) ("Courts, applying equitable principles, have laid down the doctrine of equitable estoppel by which a defendant may be estopped by his conduct from asserting defenses such as the statute of limitations.").[2] In particular, a Defendant may not raise a limitations defense if it has "lull[ed] [the] plaintiff into a false sense of security by representing that a claim will be amicably settled without the necessity for litigation." W.V. Pangborne & Co., Inc. v. New Jersey Dept. of Transp., 116 N.J. 543, 553-554 (1989).

In addition, both New Jersey and Connecticut law provide that where a debtor has acknowledged a debt, either through written instrument or partial payment, the statute of

---

provision in a contract… is valid and binding upon the parties."); State v. Lombardo Bros. Mason Contractors, Inc., 51 Conn. Supp. 265, 280 (Conn. Super. 2009) ("A contractual limitation on the time to bring suit is not a statute of limitations. Instead, it is a provision of the contract, and is binding upon the parties"); Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 170 (App. Div. 2007) ("Generally, contract provisions limiting the time parties may bring suit have been held to be enforceable, if reasonable.") (citation omitted).

[2]   See also Johnnycake Mountain Associates v. Ochs, 104 Conn. App. 194, 208-209 (2007) ("[t]here are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other."); Trinity Church v. Lawson-Bell, 394 N.J.Super. 159, 171 (App. Div. 2007) ("a defendant may be denied the benefit of a statute of limitations where, by its inequitable conduct, it has caused a plaintiff to withhold filing a complaint until after the statute has run.").

limitations on that debt is tolled. Zapolsky v. Sacks, 191 Conn. 194, 198 (1983) ("The Statute of Limitations creates a defense to an action. It does not erase the debt. Hence, the defense can be lost by an unequivocal acknowledgement of the debt, such as a new promise, an unqualified recognition of the debt, or a payment on account."); Shuttie v. Mikelis, L-5813-05, 2007 WL 2032942, 4 (App. Div. July 17, 2007) ("It is clear that an acknowledgment to pay an existing debt, immediately or upon demand, constitutes a new contract for purposes of applying the statute of limitations, whether or not collection on the prior debt was time-barred.").

In this case, Plaintiff has introduced substantial evidence that Defendant admitted to—and agreed to pay—the debt that Plaintiff now seeks to recover. Plaintiff has introduced certifications by John Lyback, a Project Manager at Fabcon, and Julain Schmitt, an employee in Fabcon's accounts receivable department. (Doc. No. 17). Both recall specific conversations with Stegla employees, including Sal Assenza, Joe Angeletti, and Zeenat Ikramullah in which they were told that payment would be made. Plaintiff has also attached faxes from Stegla employee Dorothy Turner which promise that "final balance will be forwarded upon receipt of the final check from the Client." (Pl. Lyback Cert. Ex. 2, 3) (Pl. Schmitt Cert. Ex 1, 2). Plaintiff has further provided evidence of partial payments made on the debt after the expiration of the claimed limitations period. (Lyback Cert. Ex. 7). Moreover, Plaintiff was provided with an explanation for the late payment—the need for Stegla to first be paid by the ultimate client—that led it to believe that the delay in payment was ordinary and did not constitute an intentional breach of Stegla's contractual obligations. Id. ¶ 12. Finally, Defendant admits in its papers that the debt is due for the services that Fabcon provided. (Def. Br. 6).

Even the incomplete evidence presented to the Court raises the significant possibility that Stegla has waived its limitations defense by acknowledging or making partial payments on the

Fabcon debt or that Stegla's repeated assurances that the debt would be paid require that it be estopped from raising the limitations defense. Discovery is clearly needed to determine (1) the full extent of Stegla's representations to Fabcon concerning the unpaid invoices; and (2) the full extent of Stegla written acknowledgement or partial payment of the outstanding debt. Summary judgment is therefore premature.[3]

### III.   CONCLUSION

For the reasons set forth above, Defendant's Motion is DENIED.

s/ Dickinson R. Debevoise<br>
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: February 25 2011

---

[3] Because the evidence before the Court provides ample basis to deny Defendant's Motion, this Court will not determine whether the limitations provisions of the contracts are inconsistent with the payment provisions or otherwise unenforceable.